Yes, it is. A good place to be. May it please the Court, this is a case that involves the old 1205C, which we're still operating under in this particular case, but with a, I would say a very different twist. This is a woman who's 29 years old. She's completed nine years of special education. She kind of drifts between Moberly and Columbia Public Schools, which is not by itself a good thing. The issue of another impairment is rather easily met because in March of 2009, she had surgery for scoliosis. They have fused nine vertebrae, added screws and hardware to that to hold those in place. She has worked three days in her life in a tomato canning factory in her backyard. The issue for the Court is whether the claimant meets 1205C. And the reason I think this is so interesting is you will find cases in this inferred, you don't have to have the test, 70 or below, it's considered to be permanent at 16, and you have another severe impairment. There are also other cases that talk about the adaptive issues, and that is what I think is so interesting about this case. The place that that continually comes up is in the listing itself that states, and I quote from Listing 1205C, intellectual disability refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. The evidence demonstrates or supports onset of impairment before age 22. Now, that is read by some courts as that's what the log Q means, that's what mental retardation means. Other courts say, where is the evidence of adaptive functioning? This is a case in which the ALJ said, well, she doesn't meet that adaptive functioning test because she takes care of her child, she watches TV, she talks to friends on the phone. It's the only case I have ever been involved with in which there is a specific test administered to determine the adaptive ability. The Moberly schools administered Counselor, if I understood you about cases, is Johnson v. Colvin, are you familiar with that case? I think so, Judge. 8th Circuit, 2015, I think it's in the briefs. I can check and see. I remember it being in the briefs. I don't know whether you cite it, but isn't it awfully close? Well, I think it's close, Your Honor, except that this is our opportunity at age 14 that she is tested by the schools for her adaptive abilities. And as found at page 277 of the below, that means there's a problem. Out of 10 tests, she scores an 11 on self-care, which is one of the things the ALJ cites. She's able to take care of her personal issues. On the other nine, she scores at 7 or below. And communication being one of the important ones for the ALJ, she scores a 1. She is as bad as you can be. So in this case, I think we shift to the question of her adaptive abilities at age 14 were terrible. And that doesn't have anything to do with IQ. You can give that to anybody as to how well you adapt. But at 14, she didn't adapt at all. Now, how does the ALJ find that she became so good or have such issues? Because the ALJ at page 15 of the Administrative Record Part 1 says she's going to follow the rules and talk about communication, self-care, home living, social, interpersonal skills, use of community resources. In this case, this claimant for those issues, communication being one, is at 1, the worst you could have. Self-care, as I said, 11. She's good at that. Home living, she's a 4. Not at all consistent with the ALJ. Social, she's a 4. There's no evidence that she improved with any of these things. Now, there's also the issue of using those What about the argument that the deficits initially manifested necessarily requires the ALJ and reviewing courts to look beyond the childhood period? Because the disability claim, of course, is being made as an adult for benefits because you can't work as an school for she watches TV, she takes care of a child. You have to remember who's at Are you talking about anything besides the ABES survey? When you say the findings made by the school? The ALJ, I'm sorry. You said the ALJ substituted daily activities for findings by the school. Yes, the findings by the school from that test. You mean the ABEL. Okay. That's only one. Our supposing counsel says I haven't studied it. It was really a survey, not a one test, but it is the test. Only one participant even completed the survey. Yes, it is. It's not exactly crystal clear, childhood long. It is not a re-endorsement for she has great adaptive abilities. No, but it's not conclusive the other way either. And that's where Johnson comes into play because in Johnson we held that if there are two inconsistent views of the evidentiary world, we must defend. I think that would be a good argument if these were clustered in the 6, 7, 8 category. They are not. These are all far. Of course, I was trying to address what I thought was your main theme is this is a child adult claim and the ALJ messed up by looking at her in her adult, as an adult, when all you're supposed to do is look at and from the, of course, whether you're a child, whether you're claiming as a child adult or not, mental retardation focuses on mental abilities before age 22. So there's always this, always the focus on early life, but mental abilities, but I heard you as arguing the ALJ messed up because by looking beyond into adulthood abilities and is that really right? No, that's not what I'm saying, but I am saying to focus on watching TV, taking care of her child. You have to remember who's answering the question. She says she helps her child with her homework. Now her IQ scores do not indicate she is able to help a third grader seriously with homework, but I would refer the court to the Lott case, which is cited at page 6 of our reply brief, which states that if someone could not do any of these things, couldn't watch TV, the court says they would need to be in an do not by themselves indicate that she has overcome the findings of that test and that she is now adaptive and does not have those problems. And if it pleases the court, I would like to save my additional time for rebuttal. Thank you. Thank you. Mr. Stewart. May it please the court. My name is Sean Stewart. I'm here on behalf of the Acting Commissioner of Social Security. Parties agree in this case that the appellant has shown the required IQ scores and the existence of an additional severe impairment that are required under Listing 1205C. Really the only issue in this case is the level of adaptive functioning. As Mr. Harlan was discussing, the listing does require deficits in adaptive functioning. That's in the preamble of the listing. That has to be shown in order for an individual to meet the listing. And in this case, like in many cases in the Social Security disability context, there is some conflicting evidence. That just highlights the role of the ALJ. It's the ALJ there at the hearing who's the finder of fact. And the interplay between that and the substantial evidence standard, which says two reasonable fact finders could look at the same facts and come to a different conclusion. But as long as one of those conclusions would support the decision of the Commissioner under the substantial evidence standard, the court is going to appeal. In this case, I think the ALJ's decision is clearly supported by substantial evidence. So when we're talking about adaptive functioning, what are we talking about? We're really talking about how well the person handles common demands in life, ordinary living, and how independent they are compared to other people of a similar age and background. And in the decision, the ALJ really went through and discussed a lot of the evidence, both testimonial evidence that the appellant had reported at the hearing, what she'd reported in function reports, as well as testing results and school records, all of which showed that her adaptive functioning was generally in the normal range. In terms of her testimony, what she reported about her daily activities, it's very critical in this case. She lived independently. She lived by herself with her young child, whom she was raising. That, in and of itself, reflects a very significant or unimpaired level of adaptive functioning. She was able to drive. She could prepare meals. She could go shopping by herself. She could count change. She had some trouble reading. That's certainly reflected. But she could use a checkbook. She could read well enough to get on the computer, use Facebook, write letters. In which also falls under adaptive functioning, she was able to leave her home on a regular basis. She visited with friends on a regular basis. She had a close relationship with relatives. All this evidence supports the ALJ's finding concerning her adaptive functioning. Now, the testing that was performed during the Rolovan period, there was a consultative psychological evaluation that was performed, and the psychologist declined to comment that the results of the testing indicated a learning disability. She did not indicate that it reflected an intellectual disability or mental retardation. That's important because those diagnoses included in those diagnoses is a finding, inherent finding, that there are deficits of adaptive functioning. That's not what the consulting psychologist found. And then also going back and looking at the school records, here in particular is some conflict in the evidence. But there was disagreement between school districts in this case about what her diagnosis was. One school district indicated that she should be diagnosed as mentally retarded, which was the nomenclature used at that time. Now the regulations use an intellectual disability. And as I said before, that would include, that reflects significant deficits in adaptive functioning. But another school district said, no, that's wrong. Based on our testing, we think she just has a learning disorder. And that's consistent with the ALJ's ultimate decision. As I said, there was some conflicting evidence. On some occasions, one of the school districts did indicate that she had mental retardation. However, there were, and it indicated that she just had some slight difficulties in adaptive functioning. The appellant raises and heavily relies on this ABS, he calls it a test, this assessment that was made. As we discussed in our brief, it's not really a test. It's more of a survey of parents, teachers, those kinds of things to get multiple perspectives on a child's functioning. In this case, the record shows that was ultimately only completed by one person. And it's absolutely true that that one person did indicate that she had very severe adaptive limitations. But we can't just rely on that one piece of evidence. It was the role of the ALJ to weigh all of the evidence in the record. And all that evidence, not just the school records, but also the evidence relating to her current functioning, strongly supported the ALJ's that her adaptive functioning was not significantly impaired. Just to briefly address some things that were brought up in the reply brief, the appellant distinguishes the ash and gasoil cases. That's absolutely true. We certainly didn't cite those to suggest that the facts of this case were similar to those cases. Not at all. However, the Johnson case, Judge Benton, as you mentioned, looking at that case and this case, they're different in terms of the evidence concerning adaptive functioning in the cases. The claimant in Johnson had an IQ of 67. The IQ in this case I believe is 68. In Johnson, that claimant had been assessed at various times with mental retardation, like this case. But then there are also conflicting diagnoses. In Johnson, there have been diagnoses of borderline intellectual functioning, which means we don't have... No, I believe that person was somewhat older. But the same rules would apply. Oh, but I thought a child adult claim is basically someone who has never worked and claims that the reason for that, typically an SSI applicant. Right. Whereas a mental retardation may be an issue by someone who worked 10 or 15 years and then claims disability with that being an impairment. So is there any difference in looking at those two types of claims? No, there's not. The adult listing criteria are used in both of those cases. The difference between a child adult disability case is that the amount of that, then their benefits are based on their parents' earning record. Whereas a standard disability claim, it's based on the person's own earnings record. Or an SSI, it's not based on their earnings record at all. Turning back to the Johnson case, as in this case, she'd been in special education. She left school even earlier than the appellant in this case. She left school, I think, in ninth grade because she was having a child, again, like the appellant in this case. She'd never worked, again, like this case. So the fact she didn't work isn't necessarily determinative. In that case, like this case, she left school because she had a child. But in Johnson, again, like this case, she had the same kind of activities. Normal household duties, could go out in the community, go shopping, downchange, that kind of thing. I just think that based on the court's previous holding in Johnson, this case represents almost the exact same back that you affirm in this case. And just briefly, I know that Mr. Harlan clarified this in his statement, but we look at the entire record in terms of functioning. While those deficits have to have initially manifested during the developmental period, it's entirely proper for the ALJ to look at the current functioning because that's presumed to go forward to somebody who has an intellectual disability. Their functioning is not going to change over time. And in this case, the ALJ looked both at her current functioning and did refer back to her school records, in particular, the disagreement between the school districts about whether she had a learning disability or whether she was mentally retarded, because that was the term that was used then. So just to wrap up, I think the ALJ looked at, analyzed each prong of 1205. I think the evidence strongly supports this finding in terms of the substantial evidence supported. It's one reasonable interpretation of the record. And on that basis, I would respectfully ask the court to affirm the district court's decision. Thank you. Thank you. If I had a good reason as to why I went back there and sat down, I would tell you, but I don't. But I think I can do this very quickly. Page 17 of the 166 children. Diagnosis was mental retardation. That's at page 258, part two of the administrative record. The other that I think that is important is found at page 58 of our brief, cites the WISC, which would be the last sentence, reports from teacher observations further indicate that Portia has adaptive behavior issues. They're not just relying on the test, which is specifically to test adaptive behavior, but they are talking to the teachers and their observations. And as counsel said, there's no evidence that that changed. We would agree with that. The test and the teacher observations are both very consistent. We would ask the court to reverse the case and award benefits. Thank you. Very good. Thank you, Mr. Harlan. Thank you, counsel. A well-briefed and argued case, and we'll take it under advisement.